**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DIANE VARELA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUPERFOODS, INC., d/b/a LIVE IT UP,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff DIANE VARELA ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant SUPERFOODS, INC. d/b/a LIVE IT UP (hereinafter "Live It Up" or "Defendant").

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices of Live It Up with respect to the manufacturing, marketing, and sale of Defendant's superfood products, including the Live It Up Super Greens, including both Original and Wild Berry flavors, throughout the United States (hereinafter the "Products") which contained *Salmonella*.

2. Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that the Products are contaminated or are at risk of being contaminated with *Salmonella,* a bacteria can cause serious and sometimes fatal infections in young children, frail or elderly people, and others with weakened immune systems, and in some circumstances (even in healthy persons) can result in the bacteria getting into the bloodstream and producing more severe illnesses such as arterial infections (i.e., infected aneurysms) ,endocarditis and arthritis

3. On January 15, 2026, Defendant released a press release announcing that it initiated a voluntary recall of the Products due to potential presence of *Salmonella*, and the FDA published the recall on its website on January 20, 2026 (the "Recall").[1]

4. *Salmonella* are a leading cause of foodborne illness, hospitalizations, and deaths in the United States and worldwide.[2] Anyone can get a Salmonella *infection*. But some groups of people have an increased chance of infection, and some people may become seriously ill, including children under 5, adults over 65 (or over 50 with underlying medical problems), people who have a weakened immune system, and international travelers.[3]

5. According to the FDA, "there have been 45 illnesses and 12 hospitalizations across the United States due to *salmonella* contamination linked to a single product. At this time, the FDA and CDC have reported that the outbreak may be linked to Live it Up Super Greens. No other Live it Up products are involved in this recall at this time. Production of the product has been suspended while FDA and the company continue their investigation as to the source of the problem."[4]

6. Consumers who purchased Defendant's Products, such as Plaintiff, reasonably expected that the Products they purchased would be safe for consumption and would not contain, or be at risk of containing, any harmful substances such as *Salmonella.*

7. Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain, or risk containing, *Salmonella*. Knowing of the presence of Salmonella is material to reasonable consumers. The presence of Salmonella was solely within the possession of Defendant, and consumers could only obtain such information by conducting by

---

[1] https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-moringa-leaf-powder-january-2026 (last accessed Jan. 29, 2026)
[2] https://www.cdc.gov/salmonella/about/index.html (last accessed Jan. 29, 2026)
[3] *Id.*
[4] *See* fn 1.

sending the products off to a laboratory for extensive testing. This omission leads a reasonable consumer to believe they are not purchasing a product with a known bacterium such as *Salmonella* when in fact they are purchasing a product that is indeed contaminated with the dangerous bacterium *Salmonella*.

8. A representative example of Defendant's lack of disclosure on the Products is depicted below[5]:







9. Consumers, such as Plaintiff, trust manufacturers like Defendant to sell products that are safe to consume and are free from known harmful substances, including *Salmonella*.

10. In fact, Defendant repeatedly highlights the quality of its products, emphasizing that the Products encourage "healthy living with the emphasis on living. What you eat should lift you up, not tie you down."[6]

11. Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product–the packaging and labels themselves. As such, a

[5] *See id.*
[6] https://letsliveitup.com/pages/about (last accessed Jan. 29, 2026)

reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing a product that is safe for consumption and does not contain any harmful bacteria. Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing *Salmonella*.

12. Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, *Salmonella*, which is dangerous to one's health and well-being. Nevertheless, Defendant does not list or mention *Salmonella* anywhere on the Products' packaging or labeling.

13. As set forth below, the Products, such as that manufactured, marketed, and sold by Defendant, containing or at risk of containing *Salmonella* are by no means safe for consumption and thus are entirely worthless.

14. Plaintiff and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels. Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

15. Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350. Defendant also breached and continues to breach its warranties regarding the Products.

16. Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of California and Defendant Live It Up Inc. is a citizen of New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

18. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

19. Venue is proper because Defendant maintains a principal place of business in the Southern District of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

20. Plaintiff Diane Varela is a citizen and resident of Orange County, California.

21. During the relevant period, Plaintiff Varela purchased Defendant's Products that possibly contained or had the risk of containing *Salmonella*. On or about July 24, 2025, Plaintiff Varela purchased through Defendant's website an 8.5 Oz Super Greens item for $39.99, plus tax. Prior to purchasing the Product, Plaintiff Varela saw the packaging of the Product and reviewed information on Defendant's website concerning its products.

22. Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much for the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. The

Products Plaintiff received were worthless because they possibly contained *Salmonella*. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

23. Defendant Superfoods, Inc. is a Delaware corporation with its headquarters and principal place of business located at 228 Park Avenue S, Unit 43597, New York, New York 10003.

24. Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## FACTUAL BACKGROUND

25. Defendant manufactures, markets, advertises, and sells "smart superfoods that taste great."[7]

26. Consumers, such as Plaintiff, have become increasingly concerned about the effects of ingredients in products that are being consumed. Companies, such as Defendant, have capitalized on consumers' desire for healthy food products which promote the wellbeing of the consumer, and indeed, consumers are willing to pay, and have paid, a premium for these products.

27. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as *Salmonella*, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

---

[7] *Id.*

28. The Products' packaging does not identify *Salmonella*. Indeed, *Salmonella* is not listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of *Salmonella* in the Products. This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, *Salmonella*.

29. However, the Products contain, or are at risk of containing, *Salmonella*.

30. Defendant's business is a sophisticated operation that has been in the business of producing, manufacturing, selling, and distributing food products for several years, including producing and manufacturing the contaminated Products.

31. Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *Salmonella* contamination, as well as the ability to test the Products for *Salmonella* contamination prior to releasing the Products into the stream of commerce. Such knowledge is solely within the possession of Defendant.

32. Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products. Such knowledge is not readily available to consumers like Plaintiff and Class Members.

33. Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

34. Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing *Salmonella* is likely to continue to deceive and mislead reasonable consumers, as they have already deceived and misled Plaintiff and the Class Members.

35. Defendant's misrepresentations and omissions were material and intentional because consumers are concerned with what is in the products that they orally ingest. Consumers such as Plaintiff and the Class Members are influenced by Defendant's marketing and advertising campaign, the Products' labels, and the listed ingredients. Defendant knows that if they had not omitted that the Products contained *Salmonella*, then Plaintiff and the Class would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products.

36. Consumers rely on marketing and information in making purchasing decisions.

37. By omitting that the Products include *Salmonella* on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that contained *Salmonella*.

38. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

39. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

40. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without Salmonella over comparable products not so marketed.

41. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

a. Paid a sum of money for Products that were not as Defendant represented;

b. Paid a premium price for Products based on Defendant's false and misleading misrepresentations;

c. Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted;

d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

e. Were denied the benefit of the properties of the Products Defendant promised.

42. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiff and the Class Members would not have been willing to purchase the Products.

43. Plaintiff and the Class Members paid for Products that do not contain *Salmonella*. Since the Products do indeed or possibly contain Salmonella, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

44. Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

45. Plaintiff and Class Members saw the Products' packaging prior to purchasing the Products. Had Plaintiff and Class Members known the truth about the Products, i.e., that they do

or possibly contain *Salmonella*, they would not have been willing to purchase them at any price, or, at minimum, would have paid less for them.

## CLASS ALLEGATIONS

46. Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

47. The proposed Class is defined as follows:

> **Nationwide Class:** All persons within the United States who purchased Defendant's affected Products.
>
> **California subclass:** All persons within the state of California, who purchased Defendant's affected Products.

48. Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Classes based upon discovery and further investigation.

49. *Numerosity:* The proposed Class is so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

50. *Commonality:* Questions of law or fact common to the Class include, without limitation:

a. Whether the Products in question were unsafe;

b. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

c. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

d. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products Whether

Defendant had a duty to disclose, prior to purchase, the defective nature of the Products to consumers;

e. Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public;

f. Whether Defendant's conduct constitutes an unlawful breach of the implied warranty of merchantability;

g. Whether Defendant's conduct constitutes an unlawful breach of express warranties;

h. Whether Defendant's fraudulently omitted material information in its interactions with consumers;

i. Whether Defendant was unjustly enriched; and

j. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

51. *Typicality:* The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class members were injured and suffered damages in substantially the same manner as Plaintiff, Class members have the same claims against Defendant relating to the same course of conduct, and Class members are entitled to relief under the same legal theories asserted by Plaintiff.

52. *Adequacy:* Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions.

53. *Predominance:* Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiff and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

54. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

55. *Manageability:* Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

56. The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

57. The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

58. Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violation of The California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, et seq.**
**(On behalf of Plaintiff and the California Subclass members)**

59. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

60. Plaintiff brings this claim on behalf of herself and the California Subclass against all Defendants.

61. The California Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

62. Defendants' knowing and intentional conduct described in this Complaint constitutes unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. Specifically, Defendants' conduct is unlawful, fraudulent, and unfair in at least the following ways:

a. by knowingly and intentionally concealing from Plaintiff and the California Subclass that the Products do or possibly contain Salmonella while obtaining money from the California Subclass;

b. by marketing Products as safe for their intended use;

c. by purposefully processing, preparing, packaging, storing, manufacturing, marketing, and selling the Products to contain Salmonella that cause increase risk for cancer and even death; and

d. by violating the other California laws alleged herein, including the False Advertising Law and Consumers Legal Remedies Act.

63. Defendants' misrepresentations, omissions, and concealment were material to the Plaintiff and California Subclass, and Defendants misrepresented, concealed, or failed to disclose

the truth with the intention that consumers would rely on the misrepresentations, concealment, and omissions.

64. Defendants' material misrepresentations and omissions alleged herein caused Plaintiff and the California Subclass to make their purchases of the Products.

65. Absent those misrepresentations and omissions, Plaintiff and the California Subclass would not have purchased the Products or would not have purchased the Products at the prices they paid.

66. Defendants' actions are also unfair. Defendants engaged in these illegal practices for significant financial gain, which are unlawful and violate state and federal drug laws, are unreasonably dangerous to Plaintiff and the California Subclass members, and not outweighed by any benefit. Marketing adulterated foods in a systematic manner is unethical, unscrupulous, and offensive. Plaintiff and the California Subclass had no reasonable way of testing the Products before purchasing them and could not have avoid their injury.

67. Accordingly, Plaintiff and the California Subclass have suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.

68. Defendants' violations present a continuing risk to Plaintiff and the California Subclass, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

69. Plaintiff seeks restitution if monetary damages are not available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and the California Subclass. Unlike damages, the Court's discretion in

fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not. On behalf of herself and the California Subclass, Plaintiff seeks an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

**SECOND CAUSE OF ACTION**
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 172000, et seq.**
**(On behalf of Plaintiff and the California Subclass members)**

70. Plaintiff brings this claim on behalf of herself and the California Subclass against all Defendants.

71. The California Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

72. Defendants' knowing and intentional conduct described in this Complaint constitutes unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. Specifically, Defendants' conduct is unlawful, fraudulent, and unfair in at least the following ways:

a. by knowingly and intentionally concealing from Plaintiff and the California Subclass that the Products do or possibly contain Salmonella while obtaining money from the California Subclass;

b. by marketing Products as safe for their intended use;

c. by purposefully processing, preparing, packaging, storing, manufacturing, marketing, and selling the Products to contain Salmonella that cause increase risk for cancer and even death; and

d. by violating the other California laws alleged herein, including the False Advertising Law and Consumers Legal Remedies Act.

73. Defendants' misrepresentations, omissions, and concealment were material to the Plaintiff and California Subclass, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that consumers would rely on the misrepresentations, concealment, and omissions.

74. Defendants' material misrepresentations and omissions alleged herein caused Plaintiff and the California Subclass to make their purchases of the Products.

75. Absent those misrepresentations and omissions, Plaintiff and the California Subclass would not have purchased the Products or would not have purchased the Products at the prices they paid.

76. Defendants' actions are also unfair. Defendants engaged in these illegal practices for significant financial gain, which are unlawful and violate state and federal drug laws, are unreasonably dangerous to Plaintiff and the California Subclass members, and not outweighed by any benefit. Marketing adulterated foods in a systematic manner is unethical, unscrupulous, and offensive. Plaintiff and the California Subclass had no reasonable way of testing the Products before purchasing them and could not have avoid their injury.

77. Accordingly, Plaintiff and the California Subclass have suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.

78. Defendants' violations present a continuing risk to Plaintiff and the California Subclass, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

79. Plaintiff seeks restitution if monetary damages are not available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult.

But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and the California Subclass. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not. On behalf of herself and the California Subclass, Plaintiff seeks an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

**<u>THIRD CAUSE OF ACTION</u>**
**Negligence**
**(On Behalf of Plaintiff and the Nationwide Class)**

80. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

81. The conduct of Defendant in manufacturing, distributing, and selling the Products with the contamination of *Salmonella* constituted negligence in failing to reasonably act in accordance with all applicable standards of care. Defendant owed Plaintiff and Class members a duty not to disseminate a materially contaminated, product. Defendant breached said duty of care when it nevertheless manufactured, distributed, and sold the Products with the contamination of *Salmonella* to consumers, including Plaintiff.

82. Defendant also breached its duty of care by negligently failing to timely and/or adequately warn Plaintiff and the Class of the contamination of *Salmonella*, even after Defendant was, or should have been, fully aware of that the Products were contaminated.

83. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members suffered economic injury, entitling them to just compensation, as detailed below.

**<u>FOURTH CAUSE OF ACTION</u>**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

84. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

85. All preceding paragraphs are incorporated by reference as though fully set forth herein.

86. Defendant represented to Plaintiff and Class members that its Products were reliable, merchantable, and safe to consume.

87. The Products to fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

88. Defendant knew or should have known that its Products could not conform to its representations because of the contamination of *Salmonella*.

89. Defendant mispresented, concealed, and omitted material information concerning the *Salmonella* found in its Products.

90. The contamination of *Salmonella* and the facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase their Products.

91. Defendant mispresented, concealed, and omitted material information concerning the contamination of *Salmonella* in order to induce Plaintiff and Class members to purchase their Products at a substantially higher price than what they would otherwise have paid.

92. Plaintiff and Class members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing the Products.

93. Plaintiff and Class members would not have purchased the Products if they knew that they were contaminated with *Salmonella*, or they would have only paid substantially less.

94. Plaintiff and Class members conferred substantial benefits on Defendant by purchasing contaminated Products at a premium without receiving a product that conformed to Defendant's representations.

95. Defendant knowingly and willingly accepted and enjoyed these benefits.

96. Defendant's retention of these benefits would be inequitable because Defendant obtained benefits to the detriment of Plaintiff and Class members when Plaintiff and Class members did not obtain their promised benefits.

97. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members are entitled to restitution.

**<u>FIFTH CAUSE OF ACTION</u>**
**Breach of Implied Warranty of Merchantability**
**(on behalf of Plaintiff and all Class Members)**

98. Plaintiff repeats and re-allege the allegations above as if set forth herein.

99. The sale of Defendant's Products created an implied warranty of merchantability pursuant to U.C.C. § 2-314.[8]

---

[8] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-314: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Art. 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

100. Defendant, as the manufacturer, marketer, and distributor, impliedly warranted that the Products are merchantable as safe.

101. Plaintiff and Class Members purchased the Products relying on Defendant's skill and judgment in properly manufacturing, packaging and labeling the Products.

102. Defendant breached the warranty implied in the contract for the sale of the Products because they could not "pass without objection in the trade under the contract description," the Products were not "of fair average quality within the description," were not "adequately contained, packaged, and labeled as the agreement may require," and did not "conform to the promise or affirmations of fact made on the container or label if any." *See* U.C.C. § 2-314(2) (listing requirements for merchantability). As a result, Plaintiff and Class Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

103. Defendant knowingly breached the implied warranties by including *Salmonella* in the Products sold to Plaintiff and the Class without properly notifying them of their inclusion in the Products.

104. Within a reasonable time after it knew or should have known, Defendant did not change the Products' label to include *Salmonella* in the ingredients list.

105. As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and Class members have been injured and sustained damages.

106. Defendant has actual notice of the warranty claims alleged herein due to its recall of the Products.

**PRAYER FOR RELIEF**

WHEREFORE, the following relief is requested:

a. An order certifying this action as a class action.

b. An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial.

c. An order enjoining Defendant's unlawful conduct.

d. An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

e. An award of interest as provided by law, including pre-judgment and post-judgment interest.

f. Such other and further relief as this Court may deem just, equitable, or proper.

Dated: January 30, 2026

Respectfully submitted

By: /s/ Jason P. Sultzer__________
Jason P. Sultzer
**SULTZER & LIPARI, PLLC**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Telephone: 845-483-7100
sultzerj@thesultzerlawgroup.com

Jeffrey K. Brown
Michael A. Tompkins
Brett R. Cohen
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

*Counsel for Plaintiff and Proposed Class*